UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| HERAEUS MEDICAL GMBH, et al., <br><br> Petitioners, <br><br> v. <br><br> BIOMET, INC. et al., <br><br> Respondents. | CASE NO. 3:20-CV-802-JD-MGG |

**OPINION AND ORDER**

On September 22, 2020, Petitioners Heraeus Medical GmbH and Heraeus S.A.S. filed their Application for Discovery in Aid of Foreign Litigation Pursuant to 28 U.S.C. § 1782 ("the Section 1782 Application"). This would authorize Petitioners to issue and serve subpoenas upon Respondents Zimmer Biomet Holdings, Inc., Biomet, Inc., Biomet Orthopedics LLC, Zimmer, Inc., Zimmer US, Inc., and Biomet Manufacturing, LLC. On December 7, 2020, Respondents filed their Motion Opposing Petitioners' Application for Discovery Pursuant to 28 U.S.C. § 1782 ("the Opposition Motion"). On December 21, 2020, Petitioners filed their response to Respondents' Opposition Motion. Respondents filed their Reply in Support of their Opposition Motion on January 4, 2021. Petitioners filed a Motion for Hearing in this matter on July 14, 2021. The undersigned held a motion hearing via video conferencing on August 18, 2021.

Having reviewed the parties' written briefs and their oral arguments, this Court **GRANTS,** in part, Respondents' Opposition Motion [DE 24]. The Court **DENIES**

Request Nos. 1-11 of the Section 1782 Application in full [DE 1] and **GRANTS** Request Nos. 12-14 in part.

I.  RELEVANT BACKGROUND

Petitioners and Respondents are both involved in the production and sale of bone cement and are competitors in the market. [DE 1 at 7, ¶ 5]. The parties have been involved in litigation since 2008—about 13 years—regarding alleged misappropriation of trade secrets in the production of bone cement, with litigation proceeding in the United States as well as various European countries. [DE 1 at 13-16]. In 2009, Petitioners filed two contemporaneous applications for discovery pursuant to 28 U.S.C. § 1782: one in the Eastern District of Pennsylvania against Esschem (a supplier for Respondents) and the other in this Court against Biomet and Biomet Orthopedics. Petitioners filed these applications to obtain evidence in a case against Biomet, several affiliates of Biomet, and others, in Germany. Using evidence gained from these Section 1782 proceedings, the German court enjoined Biomet and affiliated European companies from manufacturing and distributing bone cements that used Petitioners' confidential information and trade secrets. [DE 1 at 15, ¶ 32].

Since the resolution of the German case, Petitioners sued Zimmer Biomet and Biomet in the Eastern District of Pennsylvania alleging misappropriation of their confidential information and trade secrets ("the Pennsylvania Matter"). The Pennsylvania Matter is currently stayed[1] pending resolution of yet another proceeding

---

[1] According to Petitioners, the Pennsylvania Matter was stayed at the time Petitioners filed the instant Section 1782 Application before this Court on September 22, 2020.

between the parties—one before the United States International Trade Commission ("ITC"). [DE 1 at 16, ¶ 35]. Petitioners filed a complaint pursuant to 19 U.S.C. § 1337 before the ITC against thirteen Zimmer Biomet companies (Inv. No. 337-TA-1153, the "ITC Proceeding") on March 5, 2019. [DE 1 at 16, ¶ 36]. In the ITC Proceeding, the parties produced numerous documents pursuant to a protective order. The administrative law judge ("ALJ") in that matter issued an Initial Determination ("ID"), which is currently under review by the ITC. [DE 1 at 17, ¶¶ 37-38].

Through their instant Section 1782 Application, Petitioners request production of fourteen categories of documents to be used in other misappropriation lawsuits currently pending before courts in France, Belgium, and Germany. The parties disagree as to the appropriateness of the requested discovery on multiple grounds, including the role of the ITC's Protective Order in discovery related to the ongoing foreign proceedings.

## II.  LEGAL STANDARD

28 U.S.C. § 1782(a) states that

> [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The "twin aims" of Section 1782 are "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign

3

countries by example to provide similar means of assistance to our courts." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252-53 (2004).

Determining whether to grant a request under 28 U.S.C. § 1782 is a two-part analysis. *See id.* at 241, 264. First, an applicant must satisfy threshold requirements based on the statute: (1) the person from whom discovery is sought must reside or be found in the district of the district court to which the application is made; (2) the discovery must be for the use in a proceeding before a foreign or international tribunal; and (3) the application must be made by a foreign or international tribunal or by an interested person. *See* 28 U.S.C. § 1782. After an applicant makes this threshold showing, 28 U.S.C. § 1782 "authorizes, but does not require, the District Court to provide discovery aid [to the requesting party]." *Intel*, 542 U.S. at 241; *see also Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002) ("Congress has given the district courts broad discretion in granting judicial assistance to foreign countries.") (internal citation omitted).

The *Intel* Court articulated four factors to guide courts in deciding whether to grant a request to aid in foreign litigation:

> (1) whether "the person from whom the discovery is sought is a participant in the foreign proceeding," in which case, "the need for § 1782(a) aid generally is not as apparent as . . . when evidence is sought from a nonparticipant in the matter arising abroad"; (2) the "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the Section 1782 request conceals "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery request includes unduly intrusive or overly burdensome requests.

4

*In re Application of On Otomasyon for Judicial Assistance Pursuant to U.S.C. Section 1782*, No. 2:11-MC-157-PRC, 2011 WL 13150535, at *2 (N.D. Ind. Oct. 20, 2011) (citing *Intel*, 542 U.S. at 264-65). Despite enumerating these four factors, the *Intel* Court also declined to adopt supervisory rules to govern Section 1782 applications such that each application should be considered in light of its own unique circumstances. *Intel* at *264.*

**III.   ANALYSIS**

Petitioners' Section 1782 Application requests fourteen sets of documents. The categories of information in Request Nos. 1-11 consist exclusively of information that was previously produced, filed, or cited as part of the ITC Proceeding:

 1. The 1153 Initial Determination (excluding the confidential business information of third parties).

 2. The following Documents cited by the Administrative Law Judge in the 1153 Initial Determination . . . .

 3. Zimmer Biomet's final Objections and Responses to Heraeus' Interrogatories 1-107 in the 1153 Investigation.

 4. The opening expert report and rebuttal report as well as the following Documents cited in the opening and/or rebuttal expert reports of Heraeus' expert, Dr. Jimmy Mays, in the 1153 Investigation . . .

 5. ZBITC-1745837-6029 and all documents located in the same file path.

 6. ZBITC-1746362-568 and all documents located in the same file path.

 7. The complete deposition transcripts of Dr. Rainer Specht dated August 29, 2019 and August 30, 2019 in the 1153 Investigation and Exhibits thereto.

 8. The complete deposition transcript of Dan Smith dated September 11, 2019 in the 1153 Investigation and Exhibits thereto.

> 9. The complete deposition transcripts of Lenaic Giffard dated September 16, 2019 and September 17, 2019 in the 1153 Investigation and Exhibits thereto.
>
> 10. The complete deposition transcripts of Frank Schilke dated September 19, 2019 and September 20, 2019 in the 1153 Investigation and Exhibits thereto.
>
> 11. The complete Hearing testimony of Dr. Jimmy Mays, Dr. Thomas Kluge, Dr. Wolfgang Radke, Lenaic Giffard, Karl-Wilhelm Schneider, Dr. Anthony DiGoia, Dr. Stephen Spiegelberg, and Dan Smith in the 1153 Investigation . . . .

[DE 37-1 at 8-13]. In addition to these requests that contain evidence produced in the ITC Proceeding, Petitioners' Section 1782 Application contains the following Request Nos. 12-14 that encompass specific documents produced at the ITC Proceeding and any documents that may have been created after the proceeding:

> 12. All documents relating to CE market approvals in Europe of Zimmer Biomet's -1 and -3 formulations of Refobacin® Bone Cement R and Biomet Bone Cement R.
>
> 13. All documents relating to the selection of any copolymer and its use in the -3 formulations of Refobacin® Bone Cement R and Biomet Bone Cement R, including . . . .
>
> 14. Documents sufficient to show all sales, including costs and profits associated with such sales, of the -1 and -3 formulations of Refobacin® Bone Cement R and Biomet Bone Cement R in each package size worldwide on a county by country basis from 2005 to the present.

[DE 37-1 at 12-13].

### A.  Petitioners' Threshold Showing under 28 U.S.C. § 1782

The first requirement that Petitioners must show under 28 U.S.C. § 1782 is that Respondents "reside" or are "found" in this district. A business entity meets this requirement when it is headquartered or incorporated in the judicial district. *See In re*

*On Otomasyon*, 2011 WL 13150535, at *2. Zimmer Biomet is an entity created by the merger of Zimmer Holdings, Inc. and Biomet, Inc. Zimmer Biomet maintains its principal place of business in Warsaw, Indiana. Biomet, Biomet Orthopedics, and Biomet Manufacturing are incorporated in Indiana and maintain their principal place of business in Warsaw, Indiana. Zimmer and Zimmer US maintain their principal place of business in Warsaw, Indiana. Respondents do not dispute that they are "found" in this district. Accordingly, Petitioners have satisfied this requirement.

Second, Petitioners must establish that they will use the requested discovery in a proceeding before a foreign or international tribunal. Here, Petitioners initially stated that they plan to use the documents requested in this Section 1782 Application in proceedings currently pending in France, Belgium, and Germany, as well as other European proceedings. [DE 1 at 6, ¶ 1]. Respondents challenged the breadth of Petitioners' requests arguing that the "other European proceedings" were not within reasonable contemplation. 28 U.S.C. § 1782 "does not require that [a] . . . foreign . . . proceeding must have already commenced or . . . be pending or imminent . . . . Rather, . . . the 28 U.S.C. § 1782 requirement of a foreign proceeding is met as long as such proceeding was 'within reasonable contemplation' . . . ." *In re Sabag,* No. 19-0084, 2020 WL 4904811, at *3 (S.D. Ind. Aug. 18, 2020) (quoting *Intel*, 542 U.S. at 259). Petitioners have since clarified that they would not use the requested documents in other foreign proceedings, such as those in Denmark, Norway, Finland, the Netherlands, Italy, and Austria, "without first seeking and obtaining an amendment permitting such use." [DE 30 at 20]. With Petitioners' clarification that the Section 1782 Application is only for

7

proceedings currently pending in France, Belgium, and Germany, there is no doubt that the proceedings are within "reasonable contemplation." *In re Sabag*, 2020 WL 4904811, at *3. Therefore, they have satisfied this second requirement.

Finally, Petitioners have shown that they qualify as "interested persons" under Section 1782 given their status as litigants in the foreign proceedings for which discovery was requested. *See Intel*, 542 U.S. at 256 ("No doubt litigants are among, and may be the most common example of, 'the interested person [s]' who may invoke § 1782 . . . ."). Therefore, the third and final threshold requirement is satisfied.

With Petitioners meeting these statutory threshold requirements, the Court has discretion to grant or deny the request. Petitioners state that the four-factor test articulated by *Intel* favors this Court exercising its discretion to grant their Section 1782 Application and to compel production of the requested discovery. Respondents oppose Petitioners' Section 1782 Application, stating that most of the documents requested by Petitioners were already produced to them in the ITC Proceeding and are subject to that tribunal's protective order. Thus, Respondents express concerns about violating the requirements of the ITC Protective Order.

    B.    The *Intel* Factors Analysis

        1.    **Whether the Person from whom the Discovery is Sought is a Participant in the Foreign Proceeding**

The first *Intel* factor states that: "(1) whether "the person from whom the discovery is sought is a participant in the foreign proceeding . . .," in which case, "the need for § 1782(a) aid generally is not as apparent as . . . when evidence is sought from a

8

nonparticipant in the matter arising abroad." *See In re On Otomasyon*, 2011 WL 13150535, at *2, citing *Intel*, 542 U.S. at 244. This is because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence," whereas "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach [and] their evidence . . . may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 244.

Petitioners have clarified that their application is only for use in proceedings currently pending in Germany, France, and Belgium. [DE 30 at 20]. Biomet, one of the Respondents, is a party to the proceedings in Germany and France. However, none of the respondents are party to the proceeding in Belgium. [DE 1 at 25, ¶ 68]. Therefore, the Court must also consider whether the "discovery procedures available . . . in the pending proceedings are insufficient to procure the requested discovery." *In re Lufthansa Technick AG*, No. C17-1453-JCC, 2019 WL 331839 at *2 (W.D. Wash. Jan. 25, 2019).

Unavailability of the requested discovery in the foreign tribunal favors granting a Section 1782 application. *See Heraeus Kulzer GmbH v. Biomet, Inc.*, 633 F.3d 591, 596 (7th Cir. 2011). In *Heraeus Kulzer GmbH v. Biomet, Inc.*, on appeal from this Court's 2009 order on Petitioner Heraeus Kulzer GmbH's Section 1782 Application requesting documents for use in a German proceeding, the court observed that the discovery requested "is unobtainable in the German legal system . . . A party to a German lawsuit cannot demand categories of documents . . . . All he can demand are documents that he is able to identify specifically—individually, not by category." 633 F.3d at 596.

9

According to Petitioners, here, they are unlikely to access the requested discovery through the French, Belgian, and German proceedings, citing declarations from their attorneys in these countries. Petitioners' German counsel states that:

> [i]n German litigation, Heraeus does not have formalized means to request and subsequently obtain information from the other party . . . . The German Civil Procedure (ZPO) merely provides . . . that a party may request that the other party or a third party be ordered to present a *certain, specifically-identified document*, however, there are no procedural means in a German trade secret case to seek general discovery of the internal documents of the other party . . . . *Therefore, if information is uniquely within the knowledge and possession of the other party, it cannot be obtained under German civil procedure rules*.

[DE 25 at 12, ¶ 44 (emphasis added)]. Petitioners' Belgian counsel identifies similar limitations:

> Article 877 of the Belgian Judicial Code permits parties to pending proceedings to request the production of documents from a party to the proceedings or a third party, but *only if the documents are precisely identified* and where there are serious and consistent indications that this party would detain such documents . . . . *Therefore, if information is uniquely within the knowledge and possession of the other party, it cannot be obtained under Belgian civil procedure rules*."

[DE 26 at 5, ¶ 12 (emphasis added)]. Petitioners' French counsel provides that ". . . the French code of Civil Procedure permit[s] parties to pending proceedings to request the production of a document held by third-parties . . . but only if the document is *specifically identified*." [DE 27 at 4, ¶ 14 (emphasis added).]

Petitioners' foreign attorneys all concede that there is a way to obtain discovery in proceedings in their respective foreign countries—by identifying which documents are required with specificity. Therefore, the Court is not persuaded that discovery procedures available in these foreign tribunals would be insufficient for Petitioners'

purposes. Here, unlike the request in *Heraeus Kulzer GmbH,* Petitioners can request specific documents as evidenced by Request Nos. 1–14 attached to their Application before this Court. Petitioners even admit that they "drew on [their] knowledge of the existence of certain documents that Respondents had designated Confidential Business Information (CBI) to identify those documents for the purpose of formulating its discovery requests." [DE 30 at 13]. In addition, Petitioners acknowledged in their initial Application that "the vast majority of the Requested § 1782 Discovery was already produced by Zimmer Biomet and relied on by Heraeus' technical expert, Dr. Jimmy Mays, and/or the ALJ in the 1153 Investigation" at the ITC. [DE 1 at 17-18, ¶¶ 39-40].

Further, once a petitioner makes the threshold statutory showing ". . . the ordinary tools of discovery management, including Rule 26, come into play . . ." *Heraeus Kulzer, GmbH*, 633 F.3d at 597. Under Federal Rule 26, the scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim and proportional to the needs of the case, considering . . . *the parties' relative access to relevant information*, the parties' resources, . . . ." among other considerations. Fed. R. Civ. P. 26(b)(1) (emphasis added). The documents sought through Petitioners' Request Nos. 1-11 and portions of Request Nos. 12-14 are the same materials that Petitioners already received during the proceeding before the ITC. Additionally, Request Nos. 1 and 2 simply request the ITC proceeding record and items cited in the ALJ's ID -- not documents that Respondents uniquely possess.

Given Petitioners' clear ability to identify specific documents and thereby request them from the foreign tribunals, as well as their possession of most of the request

11

information already, discovery procedures are not insufficient in the foreign tribunals. Therefore, the first factor favors denying Petitioners' application.

### 2. Whether the Foreign Tribunal Will be Receptive to the Discovery

Many courts reviewing Section 1782 applications have found that this second factor weighs against granting an application if there is "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *In re Caterpillar Inc.*, 3:19-MC-0031, 2020 WL 1923227, at *12 (M.D. Tenn. Apr. 21, 2020) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)). As noted above, Petitioners have submitted declarations from their attorneys in France, Germany, and Belgium to suggest that those tribunals would accept evidence produced pursuant to 28 U.S.C. § 1782. [DE 1 at 28-29, ¶ 76]. Respondents cite nothing to show that these tribunals would reject this evidence. With only the declarations of Petitioners' counsel, the Court cannot conclude that the foreign tribunals would reject the evidence at issue in Petitioners' Application. Therefore, this factor is equivocal and neither favors nor disfavors granting Petitioners' Section 1782 Application.

### 3. Whether the Section 1782 Request Conceals "an Attempt to Circumvent Foreign Proof-Gathering Restrictions or Other Policies of a Foreign Country or the United States"

Petitioners contend that they are not attempting to circumvent the foreign countries' proof-gathering restrictions. Courts reviewing Section 1782 under this factor consider whether granting the requested discovery would be an affront to the foreign courts. *Application of Gianoli Aldunate,* 3 F.3d 54, 61-62 (2d Cir. 1993). In support, Petitioners point to their international counsels' declarations, who state that no court

has raised concerns or expressed its offense to Section 1782 discovery in proceedings in their respective countries. [DE 1 at 31, ¶ 82].

However, much of the discovery requested in the instant Application was delivered to Petitioners in the ITC Proceeding pursuant to a protective order entered by that tribunal. Therefore, the ITC's restrictions on the requested information through its protective order are also implicated here.[2] The ITC's proceedings are governed by Section 337 of the Tariff Act of 1990 (19 U.S.C. § 1337). This provides that:

> (1) Information submitted to the Commission or exchanged among the parties in connection with proceedings under this section which is properly designated as confidential pursuant to Commission rules may not be disclosed (except under a protective order issued under regulations of the Commission which authorizes limited disclosure of such information) to any person (other than a person described in paragraph (2)) without the consent of the person submitting it.

19 U.S.C. § 1337(n). As relevant here, the ITC Protective Order provides that:

> [i]n the absence of written permission from the supplier or an order by the Commission or the Administrative Law Judge, any confidential documents or business information submitted in accordance with [the proceeding] shall not be disclosed to any person other than: (i) outside counsel for parties . . .(ii) qualified persons taking testimony . . . (iii) technical experts and their staff who are employed for purposes of this litigation . . . (iv) the Commission, the Administrative Law Judge, the Commission staff, and personnel of any governmental agency as authorized by the Commission; (v) the Commission, its employees and Offices, and contract personnel . . . and (vi) U.S. government employees and contract personnel, solely for cybersecurity purposes.

[DE 24-3 at 2-3].

---

[2] The parties make numerous arguments about whether Petitioners have already used Respondents' confidential business information outside of the ITC proceeding or whether Petitioners have already violated the ITC Protective Order by filing this Section 1782 request, which the Court need not address to resolve Petitioners' instant Section 1782 Application.

Petitioners argue that the ITC's Protective Order should not prevent them from requesting discovery pursuant to Section 1782. Moreover, Petitioners contend that they should not be required to request an amendment to the ITC Protective Order before pursuing a Section 1782 Application. And lastly, Petitioners maintain that the ITC Protective Order does not expressly prohibit disclosure of information in foreign proceedings.

First, Petitioners point to numerous cases providing that it is not improper to use knowledge of protected information to request that information from the party who initially disclosed it. [DE 30 at 10]. Specifically, Petitioners point to *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 544 (N.D. Ind. 1991), *Guiden v. Leatt Corp.*, No. 5:10-cv-175-R, 2013 WL 12234612, at *2 (W.D. Ky. Apr. 30, 2013), *Lamar v. Cooper Tire & Rubber Co.*, No. 08-14387-CIV, 2009 WL 10666914, at *4 (S.D. Fla. July 20, 2009), and *Carter-Wallace, Inc. v. Hartz Mountain Industries, Inc.*, 92 F.R.D. 67, 69 (S.D.N.Y. 1981). [DE 30 at 10]. Petitioners also point to authority providing that a protective order in one lawsuit does not impede discovery in a subsequent lawsuit: ". . . [i]t may readily be agreed that discovery in one lawsuit that is subject to a protective order may not necessarily, or even often, preclude discovery in a subsequent lawsuit (with or without a protective order issued by the new court)." *In re Biomet Orthopedics Switzerland GmBh*, 742 F. App'x 690, 693 (3d Cir. 2018)(internal citation omitted)). [DE 30 at 14]. However, these cases involve circumstances distinguishable from those at issue in Petitioners' current Section 1782 Application. In these cases, the parties made their requests using knowledge of or referring to discovery that their opposing party had disclosed to a completely different

14

adversary pursuant to a protective order in another proceeding. Therefore, in these cases, the party seeking discovery did not already possess all the specific documents that they were seeking from their adversary.

Further, in *In re Biomet Orthopedics Switzerland GmBh*, Biomet was seeking Section 1782 discovery that Heraeus had disclosed to Esschem, a supplier of Respondent, pursuant to a protective order in another proceeding. In this matter, the court also noted that Biomet would not be able to obtain the requested documents absent Section 1782 because it could not request all the specific documents it needed: "Although Biomet could use German procedures to request the specific documents it already has from the public *Esschem* filings, it could not request a broader set of documents pertinent to its defense without being able to identify those individual documents." 742 Fed. App'x at 696. Given that Biomet did not already possess all the documents it needed as it was not a party to the original proceeding, the Court also finds this case inapposite to the circumstances of Petitioners' Section 1782 Application.

Second, Petitioners state they should not be required to turn to the ITC first because the ITC is "loath to amend protective orders to allow for the disclosure of discovery materials" and that going to the ITC in this situation would frustrate the aims of 28 U.S.C. § 1782. [DE 30 at 8]. Yet, Petitioners fail to acknowledge that the ITC Protective Order was amended on at least three occasions to permit other individuals access to the same confidential business information at issue here. The Protective Order was amended via joint motion on June 21, 2019, to "permit specified European outside counsel and in-house access to confidential business information . . . ." [DE 24-3 at 15].

15

The protective order was also amended via joint motion on October 7, 2019, to permit outside counsel in the United Kingdom access to information. [DE 24-3 at 20]. It was again amended via joint motion to permit in-house counsel access to information and to "permit documents and testimony produced in this Investigation to be used in Investigation No. 337-TA-1175 without reproducing said documents and testimony." [DE 24-3 at 24].

Third, Petitioners argue that the ITC Protective Order should not prevent them from using documents obtained pursuant to that protective order in their current foreign proceedings because it does not expressly prohibit disclosure of protected information in foreign proceedings. Petitioners direct the Court to *Via Vadis Controlling GmbH v. Skype, Inc.*, No. CIV.A. 12-MC-193-RGA, 2013 WL 646236, at *3 (D. Del. Feb. 21, 2013) and *Andover Healthcare, Inc. v. 3M Co.*, No. 14-MC-44 SRN/JJK, 2014 WL 4978476, at *1 (D. Minn. Oct. 6, 2014), neither of which are persuasive here.

In *Via Vadis*, the documents requested were produced under a protective order that specifically prohibited disclosure of certain evidence in proceedings pending in Germany and Luxembourg. 2013 WL 646236, at *3. In *3M*, the requested documents were produced pursuant to a protective order issued by another district court that had previously prohibited use of those documents in litigation then pending between the parties in Germany. 2014 WL 4978476, at *1. While the courts in both cases relied upon the express terms of protective orders issued by other tribunals as part of their discretion to deny requests under Section 1782, neither suggested that a protective order must order protection of documents from disclosure in foreign proceedings to be

16

honored by other tribunals. In fact, district courts retain discretion to deny portions of a Section 1782 application that would exasperate another jurisdiction's protective order. *See Four Pillars Enters. Co,* 308 F.3d at 1079 (noting that a ". . . magistrate judge did not abuse his discretion in concluding that a discovery order for this material under § 1782 [which had already been produced in another district court] would improperly frustrate the order of the [other district court].").

Here, 19 U.S.C. § 1337(n) clearly states that confidential information submitted to the ITC or exchanged among the parties in a proceeding before the ITC may not be disclosed without consent or pursuant to a protective order. [DE 24-3 at 3]. In addition, the ITC Protective Order states that any nonauthorized disclosure must be brought to the ITC ALJ's attention: "i[f] confidential business information submitted in accordance with [this Protective Order] is disclosed to any person other than in the manner authorized . . . the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the [supplying party] and the Administrative Law Judge . . . ." [DE 24-3 at 8]. Given the ITC's clear directive on the maintenance of confidential information and the process to follow up on nonauthorized disclosure, granting Petitioners' instant request – based primarily on documents from an ITC Proceeding, including ITC administrative documents – would frustrate that order. Based on the foregoing, the third factor in *Intel* favors denying Petitioners' § 1782 Application.

17

### 4. Whether the Discovery Request Includes Unduly Intrusive or Overly Burdensome Requests

"Once a section 1782 applicant demonstrates a need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate . . . that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives." *See Heraeus Kulzer,* 633 F.3d at 597. Petitioners contend that their instant discovery requests are not unduly intrusive or overly burdensome, stating that "many of the documents requested . . . have already been collected, reviewed for privilege, bates numbered and produced in the prior ITC matter . . . ." [DE 1 at 32, ¶ 86]. Petitioners further argue that "the relevance of the documents sought is clear and the discovery aimed at proving the misappropriation by Zimmer Biomet Group, as already found by the German court and the [ITC] is clear." *Id.* Petitioners also explain that information produced by Zimmer Biomet in the ITC proceeding is not up to date as needed for the foreign proceedings because "it has been well over a year since the last production in that matter." [DE 30 at 22]. As such, Petitioners contend that their Request Nos. 12-14 are not unduly intrusive or burdensome.

Notably, Respondents have not proffered any information regarding the burden that complying with these requests would impose. Respondents did not give the "court an estimate of the number of documents that it would be required to provide Heraeus in order to comply with the request, the number of hours of work by lawyers and paralegals required, and the expense." *See Heraeus Kulzer, GmbH,* 633 F.3d at 598. Instead, Respondents have simply contended that "Heraeus already has these types of

documents. There is no legitimate reason that Zimmer Biomet should be forced to expend the resources necessary to investigate whether new information exists since the company made its ITC discovery productions." [DE 24 at 21].

While it is true that Petitioners already possess many of the documents they have requested here, Request Nos. 12-14 encompass documents that postdate the ITC Proceeding. Petitioners do not already possess these documents. Therefore, Petitioners are not able to identify these documents with the specificity necessary to request them under the governing procedural rules of the foreign tribunals. Moreover, an amendment to the ITC Protective Order will not allow Petitioners to utilize these documents in foreign proceedings because they were not produced during the ITC Proceeding.

"If a district court is concerned that granting discovery under § 1782 will engender problems in a particular case, it is well-equipped to determine the scope and duration of that discovery." Application of *Esses,* 101 F.3d 873, 876 (2d Cir. 1996). In addition, Section 1782 provides courts with wide discretion "to tailor such discovery to avoid attendant problems." *Id.* As stated, granting Request Nos. 1-11 and the portions of Request Nos. 12-14 that duplicate the production at the ITC Proceeding would frustrate that order. Further, Petitioners can request that discovery due to their ability to specifically identify documents. However, tailoring the request to the portions of Requests No. 12-14 that encompass documents postdating the production in the ITC Proceeding allows Petitioners to get additional discovery needed for their proceedings without frustrating the ITC Protective Order.

Based on the foregoing, this factor weighs in favor of granting portions of Petitioners' Request Nos. 12-14 that involve documents not already produced as part of the ITC Proceeding.

### III. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Respondents' Opposition Motion **IN PART** [DE 24] and **DENIES IN PART** Petitioners' Section 1782 Application [DE 1] as to the totality of Request Nos. 1-11 and as to Request Nos. 12–14 to the extent they seek information duplicating Respondents' production in the proceeding before the ITC. Respondents are hereby **ORDERED** to produce information created after the date of production in the ITC matter and responsive to Request Nos. 12-14. This Court will entertain a stipulated motion for protective order related to this production as deemed necessary by the parties.

**SO ORDERED** this 10th day of September 2021.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
